a88

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

STEPHEN A. SPRINKLE,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

No. 09 CV 5042

Hon. Charles R. Norgle

## OPINION AND ORDER

Before the Court is Plaintiff Stephen A. Sprinkle's ("Sprinkle") Motion to Reverse the Decision of Defendant Commissioner of Social Security ("Defendant"). For the following reasons, Sprinkle's motion is granted. The case is remanded to Defendant for further proceedings consistent with this Opinion.

### I.     BACKGROUND[1]

On February 15, 2005, Sprinkle filed for Supplemental Social Security Income benefits for a disability that allegedly began on January 1, 1997, when he fell from a tree. His disability claim was based on various injuries resulting in pain in both of his knees, his left heel, his left ankle, and his neck, as well as depression. The claim was denied on July 14, 2005. Upon reconsideration, Sprinkle's claim was once again denied on April 6, 2006. Sprinkle subsequently requested a hearing, which was held on November 8, 2007.

Two experts were present at the hearing—an impartial vocational expert and a psychologist, Dr. Larry Kravitz, PhD ("Dr. Kravitz"). Only Dr. Kravitz provided testimony. Dr. Kravitz's testimony was based on his review of Sprinkle's mental health

---

[1] The following background information is taken from the Administrative Record on file, which includes Sprinkle's extensive medical history.

records. There was no cross-examination. Following Dr. Kravitz's testimony on Sprinkle's mental health, the Administrative Law Judge ("ALJ") determined that a physical consultation would be needed to assess Sprinkle's allegations of arthritis and pain. The ALJ stated, "[W]e have sent him out for two mental health statuses and I have ongoing mental statuses by his ongoing treating sources. So what I'm going to do is send you out to another doctor, a physical doctor." Administrative Record 910 [hereinafter AR]. The hearing ended shortly thereafter. Sprinkle was sent to an orthopedic consultant, Dr. Anthony L. Brown ("Dr. Brown"), who prepared a report based on his examination.

On March 14, 2008, the ALJ sent the orthopedic consultant's report to Sprinkle informing him of his various rights, including his right to request a supplemental hearing within ten days of his receipt of the report.[2] After receiving no response from Sprinkle, the ALJ issued a written opinion on November 18, 2008, denying him benefits.

On December 9, 2008, Sprinkle requested review of the hearing decision. The Appeals Council denied Sprinkle's request for review on June 17, 2009. Sprinkle now seeks judicial review of the ALJ's decision, and filed his Complaint with this Court on August 17, 2009. Sprinkle's Motion to Reverse the Decision of the Commissioner of Social Security is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Judicial Review of Administrative decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." Allord v. Astrue, 631 F.3d 411, 415 (7th Cir. 2011).

---

[2] The Court notes that Sprinkle contests that he received notice of the report and his right to request a supplemental hearing. This argument is addressed below.

"When . . . an ALJ's decision constitutes the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." Id. This is a deferential standard. Eichstadt v. Astrue, 534 F.3d 663, 665 (7th Cir. 2008). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . . When reviewing for substantial evidence, [courts] do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" Castile v. Astrue, 617 F.3d 923, 926 (7th Cir. 2010) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

"In rendering her decision, the ALJ must 'build a logical bridge from the evidence to h[er] conclusion, but [s]he need not provide a complete written evaluation of every piece of testimony and evidence." Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012) (quoting Schmidt v. Barnhart, 395 F.3d 737, 744 (7th Cir. 2005)). The Court "will uphold a decision so long as the evidence supports it and the ALJ explains her analysis of that evidence with 'enough detail and clarity to permit meaningful appellate review.'" Eichstadt, 534 F.3d at 665-666 (quoting Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005)).

## B. Review of the Commissioner's Determination that Sprinkle is Not Disabled

### 1. Failure to Discuss Relevant Psychological Evidence

Sprinkle argues that the ALJ's decision to deny him benefits should be remanded because the ALJ did not cite or refer to relevant psychological evidence, which contradicted the ALJ's finding that "[t]he claimant does not have an [psychological] impairment that meets or equals the criteria of any listed impairment." AR 20.

Specifically, Sprinkle alleges that the ALJ ignored a psychological evaluation favorable to his position in finding that his mental health problems did not constitute a limitation. In February 2006, the Social Security Administration sent Sprinkle to Dr. Hung-Ming Chu ("Dr. Chu") for a psychological consultation. In his report, Dr. Chu concluded, "In summary, this patient has a long-term problem mentally and behaviorally. He is still struggling to survive. If he is granted disability for his mental condition, he might still have some productivity in his life." AR 578. The ALJ's decision never mentioned Dr. Chu's findings.

Instead, the ALJ relied upon the testimony of Dr. Kravitz at the hearing. Dr. Kravitz referenced a March 2006 consultation, that occurred one month after Dr. Chu's consultation, which concluded that Sprinkle's "mental status was intact." Id. at 20. In her report, the ALJ found that "[t]he medical expert [Dr. Kravitz] opined that aside from the claimant saying that he is depressed because of pain, there is no objective evidence of any psychological/psychiatric impairment in the record. I have considered the medical expert's opinion, and find it to be well supported in the record. I therefore give it great weight and also independently reach the same conclusion." Id.

"Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [s]he may not ignore entire lines of contrary evidence." Arnett v. Astrue, 676 F.3d 586, 592 (7th Cir. 2012); see also Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009) ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling."). More specifically, while an ALJ "need not mention every piece of evidence . . . a medical opinion from an examining consultative psychologist . . .

4

is not just another piece of evidence." Walters v. Astrue, 444 F. App'x 913, 917 (7th Cir. 2011) (internal citations omitted). The ALJ committed error in failing to address the contrary psychiatric consultation of Dr. Chu. The ALJ summarily states that there is "no objective evidence" in the record of a psychological impairment, a statement which Dr. Chu's report proves to be false. Because the Court is unable to determine whether the ALJ considered that contrary evidence in making her determination, this matter is remanded to Defendant for further review.

### 2. *Selective Discussion of Medical Evidence in Determining a Residual Functional Capacity Assessment*

Sprinkle argues that the ALJ only discussed evidence which favored her findings, omitting evidence which supported Sprinkle's claims when determining his Residual Functional Capacity ("RFC") assessment. The majority of Sprinkle's argument is devoted to the ALJ's determination that Sprinkle's claims of pain in his neck and lower extremities did not prevent his ability to do "light work." The Commissioner counters that the ALJ's assessment was based upon sufficient evidence in the record as well as her own determination of Sprinkle's credibility. Sprinkle further argues that the ALJ impermissibly based her RFC assessment on a "middle ground" unsupported by medical opinion in the record.

The Court reiterates that "an ALJ need not discuss every piece of evidence in the record," so long as contrary evidence is not ignored. Terry, 580 F.3d at 477. An ALJ's decision need only be based on substantial evidence. Allord, 631 F.3d at 415. Furthermore, "[b]ecause the ALJ is in the best position to observe the witness, [the Court] will not disturb [her] credibility determinations as long as they find some support in the

5

record." Schmidt v. Astrue, 496 F.3d 833, 843 (7th Cir. 2007) (quoting Dixon v. Massanari, 270 F.3d 1171, 1178-1179 (7th Cir. 2001)).

The ALJ cites to nine different doctors' reports, all of which fail to conclusively establish a cause for Sprinkle's alleged pain. See AR 22-23. The ALJ ultimately found that "[t]he foregoing objective medical evidence and reports establish that the claimant's complaints of neck pain, and left-sided pain and weakness are were [sic] not supported by the objective medical findings of record . . . ." Id. at 23. Sprinkle cites to neurologist Dr. Surendra M. Gulati's ("Dr. Gulati") report which he alleges supports his claims of pain. However, even Dr. Gulati concluded that he was unable to determine a source for Sprinkle's alleged pain "based on [his] tools of diagnosis," which included an MRI of the brain and cervical spine as well as an EMG. Id. at 618-619. The ALJ's conclusion that Sprinkle's pain would not prevent him from "light work" is based upon substantial medical evidence in the record. Moreover, the Court accepts the ALJ's determination of Sprinkle's lack of credibility.

The ALJ's report indicates that Sprinkle was inconsistent when stating when he had last consumed alcohol or used illegal drugs. See id. at 23 (telling two different doctors two different stories, as well as changing his statements at the hearing after originally asserting that he had not consumed alcohol for seven years before admitting to drinking about once a month). In addition, the ALJ emphasizes Dr. Brown's report which states that Sprinkle originally presented with "the use of a walker and a marked limp on the left" but after the examination Sprinkle "was observed to ambulate . . . without any significant limp on the left and nonfunctional use of his walker." Id. at 918-19. The ALJ also considered evidence which suggested that on August 21, 2007, only

6

two months before the hearing, Sprinkle was hospitalized for rectal bleeding and other injuries sustained while trying to jump over a fence, "an activity totally inconsistent with his claimed limitations." Id. at 23. The Court notes that at the hearing, Sprinkle denied that he tried to jump over the fence and instead insisted that he "fell up against a fence grabbing a hand railing and [he] strained something . . . [and] started bleeding." Id. at 904. Despite Sprinkle's testimony to the contrary, the Court finds more than enough support in the record to sustain the ALJ's determination that Sprinkle's "statements concerning the intensity, persistence and limiting effects of these symptoms [of pain] are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. at 22.

Lastly, Sprinkle argues that the ALJ improperly reached a "middle ground" in her RFC assessment of "light work," which was unsupported by any evidence in the record. "[A]n ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." Schmidt, 496 F.3d at 845. Nevertheless, "[a]lthough it is a responsibility of the ALJ, as a finder of fact, not a physician, to determine plaintiff's RFC, the ALJ must consider both medical and nonmedical evidence in the record. The ALJ's are not permitted to construct a 'middle ground' RFC without a proper medical basis." Norris v. Astrue, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011).

Three doctors made an RFC assessment, all of which were rejected by the ALJ. The first two doctors found that Sprinkle is only capable of sedentary work. The ALJ rejected their findings, explaining that those doctors did not have the benefit of reviewing later reports, such as Dr. Brown's final consultative examination report. However,

7

despite the apparent weight the ALJ gave to Dr. Brown's final report, she also rejected his RFC assessment. Dr. Brown concluded that Sprinkle had no limitations. The ALJ determined that Dr. Brown was "too optimistic" and possibly prejudiced by the fact that he witnessed Sprinkle walking without a limp following his exam. AR 24. After rejecting opinions from each extreme—sedentary work and work without limitations—the ALJ found that Sprinkle could do "light work." In support of this conclusion, the ALJ states only that "[Sprinkle's] lower extremities and back have improved sufficiently for the claimant to be able to stand/walk up to six hours a day and sit up to six hours a day." Id. The ALJ's simultaneous rejection of and reliance upon Dr. Brown's report casts doubt as to whether her ultimate conclusion is supported by requisite substantial evidence. In addition, the ALJ once again summarily dismissed Sprinkle's claims of mental limitations, without mentioning why she discounted Dr. Chu's report. Accordingly, this matter is remanded to Defendant for further inquiry into Sprinkle's RFC assessment, taking into account the record evidence, focusing in particular on Sprinkle's physical limitations, if any.

### 3. *Failure to Credit Nonexertional Limitations and Obtain Vocational Expert Testimony*

Sprinkle argues that the ALJ erred when she based her disability assessment solely on the Medical Vocational grids without obtaining testimony from a vocational expert, in light of his allegations of both physical and mental nonexertional limitations. After an RFC assessment is made, an ALJ makes a disability determination, based upon the Medical Vocational Guidelines ("the grids"), a vocational expert, or both, depending on a claimant's specific limitations. The grids are "a series of tables broken into separate rules 'which classify a claimant as disabled or not disabled, based on the claimant's

physical capacity, age, education, and work experience.'" Haynes v. Barnhart, 416 F.3d 621, 627 (7th Cir. 2005) (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). "The grids, however, are designed for cases in which claimants are restricted entirely or mostly from exertional or strength limitations. Such limitations are those that affect a claimant's ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing and pulling)." Id. at 628. (internal quotation marks and citations omitted). "Nonexertional limitations, on the other hand, relate to such restrictions as climbing, balancing, stooping, kneeling, crouching, or work environment, among others." Id. (citing 20 C.F.R. § 404.1569a(c)). The grids "do not account for *nonexertional* limitations such as postural and manipulative restrictions, and thus the Commissioner has deemed the grids advisory and requires that an ALJ consult a [vocational expert] in cases where an applicant for benefits is so limited." Lawrence v. Astrue, 337 F. App'x 579, 584 (7th Cir. 2009) (emphasis in original).

Sprinkle claims to suffer from physical and mental nonexertional limitations. While the record shows that a vocational expert was present at Sprinkle's hearing, the expert did not provide any testimony. On remand, if Sprinkle's claims of nonexertional limitations are substantiated by further review of the record, then testimony from a vocational expert is required.

### 4. *Failure to Cross-Examine*

Finally, Sprinkle claims that the ALJ committed legal error by failing to allow his attorney to cross-examine the mental health expert at his hearing, and in failing to provide Sprinkle with an opportunity to respond to Dr. Brown's subsequent evaluation and request a supplemental hearing. As an initial matter, the Court notes that Sprinkle

appears to withdraw his allegations of failure to provide notice of Dr. Brown's report and the right to request a supplemental hearing. In his response, Defendant explained that the proffer letter containing the report and the requisite notice were absent "from the administrative record originally filed with the Court" and that Sprinkle's present counsel did not represent him at the administrative level. Def.'s Resp. to Pl.'s Mot. to Reverse the Decision of the Commissioner for Social Security 14 n.9. Indeed, the missing proffer letter and report have since been added to the Administrative Record. Sprinkle does not address this claim further in his reply brief. Accordingly, the Court need not consider this issue.

Sprinkle maintains that the ALJ committed legal error by failing to allow him to cross-examine the medical expert, Dr. Kravitz, at the hearing. However, "a claimant represented by counsel is presumed to have made his best case before the ALJ." Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007). Sprinkle was represented by counsel at his hearing. Furthermore, based on the transcripts, there is no indication that Sprinkle or his counsel attempted to cross-examine Dr. Kravitz. Nor does the record indicate that the ALJ prevented Sprinkle or his counsel from cross-examination. Therefore, the Court finds no legal error on the part of the ALJ in this regard.

### III. CONCLUSION

For the foregoing reasons, Sprinkle's Motion to Reverse the Decision of the Commissioner of Social Security is granted. This matter is remanded to the Social Security Administration for further proceedings consistent with this Court's Opinion.

IT IS SO ORDERED.

ENTER:

*[signature: Charles Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 10, 2012